IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| NOEL A. MOORE and LOVELLA I. MOORE, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 210331R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Conference Decision Letter/Notice of Assessment dated

April 28, 2021, for the 2016 tax year. A consolidated trial was held remotely via Webex on

February 28, 2022, for three related cases: (1) *Noel A. Moore and Lovella I. Moore v.*

*Department of Revenue*, TC-MD 210331R; (2) *Westside Lumber, Inc. and Bret A. Moore and*

*Noel Moore v. Department of Revenue*, TC-MD 210332R; and (3) *Bret A. Moore and Amy M.*

*Moore v. Department of Revenue*, TC-MD 210333R. Richard Brewster, CPA, represented

Plaintiffs. Noel Moore (Noel), Bret Moore (Bret), and Elaine Frost (Frost) testified on behalf of

Plaintiffs.[1] Auditor, Peggy Ellis represented Defendant, but did not testify. Plaintiffs' Exhibits 1

through 47, 101 through 120, and Defendant's Exhibits A through F were admitted into evidence

without objection.

I.  STATEMENT OF FACTS AND ANALYSIS

These three appeals each involve Defendant's assessment against one of three family-

owned businesses, and the liability therefrom ultimately passing through to Plaintiffs Noel,

---

[1] The court customarily refers to parties by their last names; However, because some of the parties have the same last name, they will be identified using their first names.

Lovella Moore (Lovella), Bret, and Amy Moore (Amy). Because many of the transactions presented in each of these three appeals relate to the same people and entities, the court held one consolidated trial and renders a single decision.

These related cases involve three businesses owned by members of the Moore family: (1) W. L. Moore Construction (WLM Construction), owned by Noel and Bret; (2) W. L. Moore Properties (WLM Properties), owned by Noel and Lovella; and (3) Westside Lumber, owned by Bret and Amy. WLM Construction began operations in approximately 1957, and primarily develops subdivisions with single family dwellings. WLM Properties is akin to a long-term holding company. Westside Lumber, an S corporation, was a retail lumber yard that closed its doors in 2007 and officially dissolved in 2016.

The issues in this case are (1) the basis of Plaintiffs' real property located in Medford, Oregon, which Noel purchased in 2006 and sold in 2016 and (2) whether Plaintiffs are allowed a deduction for bad debt in tax year 2016. The issues are relatively simple and straightforward, which belies their factual complexity. Because many of the facts are disputed, the court combines the Statement of Facts and Analysis, traditionally separate sections, focusing on each transaction separately.

A. *General Statements of the Law*

In analyzing Oregon income tax cases, the court starts with several guiding principles. First, the court is guided by the intent of the legislature to make Oregon's personal income tax identical in effect to the federal Internal Revenue Code (IRC), for the purpose of determining taxable income of individuals. *See* ORS 316.007. [2] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish their case by a

---

[2] References to the Oregon Revised Statutes (ORS) are to the 2015 version.

"preponderance" of the evidence. ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Fourth, IRC section 162 generally allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" *See* IRC § 162(a). However, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

IRC section 1001(a) states, in pertinent part, that "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain * * *." Under IRC section 1011(a), "[t]he adjusted basis for determining gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis" determined under sections 1012 and 1016. "The basis of property shall be the cost of such property * * *." IRC § 1012. "Proper adjustment in respect of the property shall in all cases be made -- (1) for expenditures, receipts, losses or other items, properly chargeable to capital account * * *." IRC § 1016(a).

B.      *Basis of Plaintiffs' Property*

The first issue before the court is Plaintiffs' basis in the property located in Medford, Oregon, nicknamed "Earnest Place" by the parties and also referred to by the name of the street it is located on, Hondeleau. A threshold issue in determining Plaintiffs' gain is first determining Plaintiffs' basis in the property. *See generally* IRC § 1011. The parties agree that Earnest Place sold on June 16, 2016, for $640,000, and that proceeds minus closing costs were allocated to Noel. However, the parties dispute Plaintiffs' basis in that property.

In 2005, the owner of Earnest Place died with two heirs, Lawrence and John Hinkle, who each anticipated receiving a 50 percent share of the property. Noel, a long-time family friend, signed an agreement to purchase the property ("Agreement of Sale") in January 2006. (*See* Ex 1.) The agreement stated the price of the property was to be determined by appraisal, but the parties believed it would be approximately $1,150,000. (Ex 1 at 1.) The agreement required Noel to pay upon execution of the agreement, $100,000, which was "an undivided 8.7% of their expectancy in the property[.]" (*See id.*) The agreement further stated: "Portions of the proceeds of the $100,000 to be paid by Buyer [Noel] will be earmarked for and applied to payment of all real estate taxes due and any other encumbrances on the subject property." (*Id.*)

Noel testified that, in purchasing the property, his goal was to develop the property, create a subdivision, and build a number of single-family residences. His plans were disrupted by the 2007-08 recession, which forced him to delay the development of Earnest Place for many years. Noel testified that, during that period, WLM Construction and WLM Properties expended multiple sums towards the future development of Earnest Place. Plaintiffs assert that a number of payments made by various entities to the Hinkle brothers, government agencies, and contractors, are all part of Noel's basis in the property. Plaintiffs offered the following expenses at trial to account for their cost basis:

| Costs | Check Number | Date | Amount |
|---|---|---|---|
| Larry Hinkle (1/2 to John) | 204 | 01/13/06 | $50,000 |
| Rich Frohreich Appraisal | 213 | 02/13/06 | $2,000 |
| Larry Hinkle (1/2 to John) | 216 | 03/21/06 | $50,000 |
| Lawyers Title (FBO Larry Hinkle) | 4104 | 05/02/07 | $243,422.12 |
| John Hinkle | 5220 | 03/21/16 | $40,000 |
| WLM Properties | 5250 | 06/17/16 | $250,000 |
| Seller's Closing Costs (Net) | N/A | N/A | $1,362 |
| Total Costs | | | $636,784.12 |

/ / /

(*See* Ex 40; *see also* Exs 2, 3, 4, 9, 35, 38 at 1, 39.)  The court addresses each of the expenses separately:

1.    *Check dated January 13, 2006, to Larry Hinkle*

Plaintiffs' first item is a check in the amount of $50,000, which references "payment on 2005 Hondeleau" in the memo section.  The check date is contemporaneous with the Agreement of Sale, dated January 2006, and is consistent with Noel's testimony.  (*See* Ex 1.)  Although Defendant's Conference Decision Letter did not include this amount as part of the basis of the Earnest Place property, at trial, Defendant accepted this item.  (*See* Ex E at 1.)  The court is persuaded that this check represented part of the basis for Noel's purchase of Earnest Place.

2.    *Check dated February 13, 2006, to Rich Frohreich*

Plaintiffs' second item is a check in the amount of $2,000, which references "app of 2005 Hondeleau" in the memo section.  (Ex 4.)  The check date is contemporaneous with the Agreement of Sale, which specifically contemplates that the "sale price of the property will be determined by appraisal."  (Ex 1 at 1.)  Defendant asserted that no appraisal was actually provided as evidence.  However, the court is persuaded that this check represented the cost to appraise Earnest Place and should be included as part of the basis for Noel's purchase of the property.

3.    *Check dated March 21, 2006, to Larry Hinkle*

Plaintiffs' third item is a check in the amount of $50,000, which references "Hondeleau" in the memo section.  The check is relatively contemporaneous with the Agreement of Sale. Although the Conference Decision did not include this amount as part of the basis, Defendant accepted this item at trial.  (Ex E at 1.)  The court is persuaded that this check represented part of the basis for Noel's purchase of the property.

4. *Check dated May 2, 2007, to Lawyers Title*

Plaintiffs' fourth item is a check in the amount of $243,422.17, which references "46G0470026SC" in the memo section. (*See* Exs 9, 10.) Noel testified that Larry Hinkle wanted to purchase a property in Shady Cove, Oregon, but lacked the funds to do so. He testified that instead of paying Larry Hinkle funds from the purchase of Earnest Place, Noel took a 50 percent interest in the Shady Cove property. The statutory warranty deed states: "The true consideration for this conveyance is $230,000" and has a hand-written notation "46G0470026SC." (*See* Ex 10.) Bret testified that the difference between the check and the amount stated on the deed ($13,422.17) probably represented the closing costs, although no closing statement was provided.

The deed also states: "The consideration paid herein has been paid by an Accommodator pursuant to an IRC 1031 Exchange." (*Id*.) Bret testified that he interpreted that language to mean that the seller was doing a 1031 exchange. Candidly, the court does not follow the logic of this transaction. The court cannot ascertain why Noel, a professional builder, who is purchasing a property from the Hinkle brothers, would "loan" money to Larry Hinkle and take a 50 percent interest in another property. Additionally, Bret's testimony that the $13,422.17 difference between the check and the amount recited in the deed represented closing costs is not persuasive. Lastly, Bret's testimony with respect to the seller conducting a 1031 exchange is directly contrary to what the document shows on its face. The document reads, "[t]he consideration paid" —by the payee— "has been paid by an Accommodator pursuant to an IRC 1031 Exchange." There are only two realistic possibilities here: either (1) the purchasers paid for the property using proceeds from the sale of another property (1031 exchange) or (2) there is an

/ / /

error in the deed. In either case, the court finds Plaintiffs have not presented persuasive evidence that the $243,422.17 check represents part of the basis for the Earnest Place property.

5. *Check dated March 21, 2016, to John Hinkle*

Plaintiffs' fifth item is check number 5220, payable to John Hinkle, dated March 21, 2016, in the sum of $40,000. (*See* Ex 35.) The check notes in the memo section, "Hinkle Down Payment[,]" and that notation matches a line item in a closing statement dated May 12, 2016. (*See* Ex 36.) Defendant did not contest this item at trial. The court is persuaded that this check is part of the Plaintiffs' basis in the Earnest Place property.

6. *Check dated June 17, 2016, to WLM Properties*

Plaintiffs' sixth item is check number 5250, payable from Noel to WLM Properties, dated June 17, 2016, in the amount of $250,000. (*See* Ex 39.) Noel and Bret testified that this sum represented an approximation of the amounts WLM Properties paid to various vendors for development of Earnest Place and that because the property was never developed, the funds should be returned.

For this item, Plaintiffs presented a series of documents, including screenshots taken from QuickBooks, miscellaneous invoices, and miscellaneous check images to various vendors from various payors (Noel, WLM Construction, and WLM Properties) for various items. Plaintiffs did not attempt to provide an organized accounting of what payments should be included in their $250,000 estimate. It appears that the figures they presented during the audit, at conference, and to the court are all different. (*See* Exs 40, 120 at 2, 45, 42, 43.) Further, many of the payments alleged as part of the basis were purportedly from WLM Construction, but the $250,000 is payable to WLM Properties. The court does not have confidence that those payments were not taken as deductions during the prior tax years. While the court certainly has authority to estimate

certain figures under the seminal case of *Cohan v. Comm'r*, 39 F2d 540 (2d Cir 1930), such estimation is only possible if there is a basis in the record from which a court can reasonably apportion the costs from other possible allocations, such as capital contributions to the business or personal expenses. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). With funds being shifted from one entity to another and without sufficient documentation, missing records, and testimony from Plaintiffs' accountant who asserts she is aware of how to account for cost basis, but does not actually do so, the court has no confidence in Plaintiffs' records. As this court has stated numerous times, the court can estimate certain items and amounts, but it declines to do so when its result would be nearer to a guess than an estimation. *See Biege v. Dept. of Rev.*, TC-MD 180399R, WL 13250372 at *3 (Or Tax M Div November 15, 2019). Here, the evidence is so incomplete, any additional amount of Plaintiffs' cost basis would be no more than a guess.

### 7. *Seller's closing costs*

Plaintiffs' seventh item is a "net" amount of closing costs from the sale of Earnest Place in the amount of $1,362. (*See* Exs 38 at 1, 40.) The escrow closing statement dated June 16, 2016, for the sale of Earnest Place shows seller charges in the amount of $1,506.65 and a seller credit for taxes in the amount of $145.09, for a rounded total of $1,362. Defendant argued for a different amount; However, Plaintiffs' testimony together with the closing statement persuades the court that $1,362 should be included in their cost basis.[3]

/ / /

---

[3] The court seeks to make one additional clarification with respect to Plaintiffs' basis in Earnest Place. Plaintiffs' argument and testimony indicated that they interpreted Defendant's audit results as an accusation of dishonesty. The court makes no such finding. Rather, the decision of the court is based on IRC section 6001, which requires taxpayers to maintain adequate records to show their income and expenses. Here, Plaintiffs have not done so. Taken at face value, the total amount of checks, receipts, and accounting journal entries submitted to the court would far exceed the price Noel paid for Earnest Place. The records do not contain sufficient information to show what the actual basis of the Earnest Place property is.

C.    *Bad Debt*

The issue is whether Plaintiffs are entitled to take a deduction for bad debt on their 2016 tax return. Frost, Plaintiffs' bookkeeper and office manager since 2002, testified that one of her responsibilities included working as Westside Lumber's accountant. (*See* Ex 43 at 1.) Frost used the accrual method of accounting. *See* IRS Pub 538 at 1 (2022) ("Under the accrual method, you generally report income in the tax year you earn it, regardless of when payment is received"). Frost sent out monthly statements of accounts to entities that took merchandise on credit. However, Plaintiffs did not submit those monthly statements as evidence.

From late 2006 to early 2007, the economy took a downturn and several accounts receivable were written off as bad debt. Westside Lumber ceased business in 2007; However, it technically remained operating until 2016 because it still held notes receivable. The largest uncollected account was Magel Construction's. Despite Magel Construction's indebtedness to Westside Lumber, Noel continued his relationship with the owners of Magel Construction, including lending them money and maintaining a landlord-tenant relationship with them. Noel and Bret testified that they hoped by maintaining their relationship with Magel Construction, they could eventually collect on the amount owed.

Plaintiffs allege that Magel Construction owed Westside Lumber a total of $51,487 when it closed its doors in 2007. Magel Construction ceased operations in 2009. In 2016, Westside Lumber officially terminated and deducted Magel Construction's outstanding balance due as "bad debt." On its 2016 tax return, Westside Lumber took a $51,487 loss deduction for Magel Construction's outstanding debt. Because the accounting system changed at a certain point, Frost was unable to retrieve all of the invoices addressed to Magel Construction. As partial evidence of the amount owed, Plaintiffs presented 16 invoices addressed to Magel Construction.

IRC section 166(a)(1) allows for the deduction of "any debt which becomes worthless within the taxable year." Cases have held that the date a debt becomes worthless should be given a fair degree of latitude to the taxpayer. *See Moore v. Comm'r*, 101 F2d 704, 707 (2nd Cir 1939) ("The real question is not when did the debt become worthless, but when did the taxpayer ascertain it to be worthless") (citation omitted). Here, the alleged debts are from 2007 and the debtor, Magel Construction, closed its business in 2009. Had Plaintiffs taken a deduction for bad debt closely following Magel Construction's closure, a good faith basis could arguably be found. However, the court can find no reasonable justification for Plaintiffs declaring the debt worthless some seven years after the debtor's business closed. Therefore, the court finds that the "bad debt" from Magel Construction did not become worthless within the taxable year, and thus cannot be deducted in 2016.

## II. CONCLUSION

After careful consideration, the court finds that Plaintiffs have substantiated their basis for the Earnest Place property in the amount of $143,362. The court also finds that Plaintiffs are not eligible for a deduction for bad debt related to Magel Construction because they waited too long to take the deduction. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part. Plaintiffs' basis in the Earnest Place property is $143,362. Defendant shall make adjustments to the various taxpayer accounts accordingly.

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiffs' appeal is denied with respect to their 2016 deduction for bad debt related to Magel Construction.

Dated this _____ day of March 2023.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on March 30, 2023.*